# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| UNITED STATES OF AMERICA<br>V.<br>Angel Roxanne Sullivan | CRIMINAL COMPLAINT<br>CASE NUMBER: 17-6246mJ |
|---|---|

I, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

### Count 1

On or about May 21, 2017, in the District of Arizona, within the confines of the Gila River Indian Community, Indian Country, ANGEL ROXANNE SULLIVAN, an Indian, did unlawfully kill ELI S. SULLIVAN, with malice aforethought.

In violation of Title 18, United States Code, Sections 1153 and 1111.

### Count 2

On or about May 21, 2017, in the District of Arizona, ANGEL ROXANNE SULLIVAN, did knowingly use and discharge a firearm during and in relation to a crime of violence, that is, Second Degree Murder, as alleged in Count 1 of this Complaint, a felony prosecutable in a court of the United States.

In violation of Title 18, United States Code, Section 924(c)(1)(A)(iii).

I further state that I am a Deputy Special Agent of the Bureau of Indian Affairs and that this complaint is based on the following facts:

See Attached Statement of Probable Cause Incorporated By Reference Herein.
Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

AUTHORIZED BY: Raynette Logan, AUSA  AWS for RL

Orlando Ramirez, BIA Deputy Special Agent
Name of Complainant

Signature of Complainant

Sworn to before me and subscribed in my presence

May 24, 2017                                        at   Phoenix, Arizona
Date                                                     City and State

HONORABLE DAVID D. DUNCAN
United States Magistrate Judge

Signature of Judicial Officer

## AFFIDAVIT OF PROBABLE CAUSE IN SUPPORT OF COMPLAINT

Your affiant, Orlando R. Ramirez, being duly sworn, deposes and says:

1. I am a Detective with the Gila River Police Department and am a Deputy Special Agent for the Bureau of Indian Affairs (BIA), I have been employed as a Detective for approximately two years and have been investigating violations of federal law, including homicides, assaults, sexual assaults, and controlled substance violations on Indian Reservations the entire time. I have been employed by the Gila River Police Department (GRPD) since September 2009. I am a graduate of the Central Arizona Regional Law Officers Training Academy and the Federal Law Enforcement Training Center, Criminal Investigator Program.

2. This affidavit is made in support of a Criminal Complaint against ANGEL ROXANNE SULLIVAN (hereinafter referred to as SULLIVAN), an Indian, for a violation of Title 18, United States Code, Sections 1153 and 1111, CIR-Murder in the Second Degree, and Title 18, United States Code, Section 924(c)(1)(A)(iii), Use of a Firearm During a Crime of Violence, committed within the confines of the Gila River Indian Community (GRIC), District of Arizona, on May 21, 2017. I am familiar with the facts surrounding this investigation. The facts contained in this affidavit are from my own observations, as well as others, during and in the course of this investigation.

3. On May 21, 2017, police officers with the GRPD responded to a male subject who was found in his bed unresponsive and was later found to have severe penetrating trauma to the right side of his head. The male victim was located at his residence in Coolidge, Arizona, which lies within the exterior boundaries of the GRIC, District of Arizona. The male subject, later identified as Eli S. Sullivan, was pronounced deceased, and GRPD Criminal Investigations Division detectives responded.

1

4. I made contact with the victim's mother, identified as K.S. She is an elderly female who is bound to a wheel chair and is not otherwise mobile. K.S. said she last saw the victim on May 20, 2017, between the hours of approximately 9:30 P.M. and 10:30 P.M. The victim told K.S. that he was going to fix his bed and go to sleep. K.S. stated she spoke to the victim, shut the door to his bedroom, and then she went to bed. K.S. stated the victim was alone when she went to bed, and SULLIVAN was inside her bedroom. SULLIVAN is K.S.'s daughter and the victim's sister. At approximately 9:00 A.M., on May 21, 2017, K.S. received a call from Johanna Norris, who asked to speak with the victim. K.S. told Johanna that the victim was asleep, and that she would wake him up. K.S. approached the victim's bedroom and observed the door was cracked open, which she thought was strange. K.S. also noted SULLIVAN's bedroom door was also slightly ajar. K.S. stated the victim had blankets covering his face, and she could not see the victim's face. K.S. removed the blanket from his face, observed the victim was not breathing and saw blood on his face and beneath his bed.

5. K.S. said she thought SULLIVAN was home the entire evening because at approximately 8:00 P.M. on May 20, 2017, SULLIVAN entered the rear door of the residence. K.S. said SULLIVAN appeared to be intoxicated as she entered the residence. After finding the victim in the morning, K.S. went to get SULLIVAN. K.S. stated SULLIVAN was not in her room and her clothing and personal belongings were no longer inside the room.

6. K.S. said SULLIVAN was home the morning of May 20, 2017. In the morning, K.S. stated SULLIVAN came inside the house and was carrying a baby blanket. K.S. said she observed something silver, which she believed to be a weapon wrapped inside the blanket. K.S. advised a male subject, identified as "Larry," entered the residence. Both SULLIVAN and "Larry" proceeded to SULLIVAN's bedroom, where they remained for approximately ten to fifteen minutes. K.S. stated "Larry" left the residence and SULLIVAN followed. SULLIVAN was still holding the blanket, but the silver item was

2

no longer visible.

7. K.S. said there was a history of violence involving K.S., the victim and SULLIVAN, for which the Gila River Police Department was contacted a number of times. According to K.S., SULLIVAN did not get along with the victim and blamed the victim for SULLIVAN'S children being removed by GRIC Tribal Social Services (TSS). K.S. stated SULLIVAN was angry at the victim. SULLIVAN would tell K.S. that she could not stand the victim and use profane and vulgar language towards the victim. K.S. said some time in 2016, SULLIVAN told K.S., "You know what? I'm going to come in. And I'm going to look like I'm happy. And look like everything is okay. But when you guys go to sleep, I'm going to shoot all of you in the head." K.S. stated on Thursday, May 18, 2017, she felt threatened by SULLIVAN, when SULLIVAN said, "Oh you'll find out it's really bad, you're going to be sorry."

8. On May 21, 2017, I spoke with the victim's nephew, Jordan Antonio Sullivan. According to K.S., Jordan speaks with SULLIVAN frequently. Jordan told me on Thursday, May 18, 2017, SULLIVAN approached him and showed him a sawed off shotgun, telling him, "Look at what I got." Jordan said she did not tell him any further details regarding the shotgun or from where she obtained it. Jordan described the weapon as a "shotgun, all silver, round barrel, sawed off with green colored strap attached, a wooden handle, and black tape wrapped around where your hand goes." Jordan stated SULLIVAN had the shotgun located inside a large black duffle bag, which he saw inside SULLIVAN'S bedroom located at K.S.'s residence.

9. Jordan said he saw SULLIVAN on May 20, 2017, at approximately 8:00 P.M., outside his residence, drinking and listening to music. Jordan stated SULLIVAN left, but returned at approximately 12:00 A.M., at which time she brought over a 32" Vizio brand television, the paperwork for her Electronic Benefits Card (EBT) card, some powdered juice, and cat food. Jordan observed SULLIVAN with a black in color woman's

3

purse and the large black duffle bag he saw her with before. Jordan said SULLIVAN's bag was filled with all of her clothing, and SULLIVAN told him she was going with a friend for a few days. Jordan described SULLIVAN as appearing "very tired" and wearing a black in color hoodie sweatshirt and Converse "Chuck Taylor" shoes.

10.     On the morning of the murder, GRPD Sergeant Jason Figueroa assisted with the investigation at K.S.'s house. Sergeant Figueroa located a set of Chuck Taylor shoe impressions, which appeared to exit the west side of the residence through the back yard. Sergeant Figueroa followed the shoe impressions from the residence, along a dirt road to an open field area, just west of the GRIC District 1 Service Center. Located in the field area was a very large tree, towards which the shoe impressions appeared to lead. Sergeant Figueroa located a black in color woman's purse and a large, black in color, duffle bag inside the tree, matching the description later provided by Jordan as belonging to SULLIVAN. The items were seized as evidence, and a sawed off shotgun matching the description provided by Jordan as the weapon possessed by SULLIVAN was located inside the black duffle bag. Also located inside the duffle bag were personal items such as a notebook, pictures of SULLIVAN, and a sonogram photograph with the name Angel Sullivan printed on the top margin of the picture. The location where the duffle bag was found is approximately a quarter of a mile from where the victim's body was located.

11.     The items located inside the tree were taken to the police department for evidence packaging and storage. Upon further inspection of the shotgun, a spent 12 gauge shell casing was located inside the chamber of the shotgun. Two additional un-used 12 gauge shells were located inside the tubular magazine underneath the barrel of the shotgun. Additionally, five 12 gauge shotgun shells were located inside a small cloth pouch inside the front zippered pocket of the duffle bag.

12.     On May 24, 2017, an autopsy was conducted on the victim by the Pima County Medical Examiner's Office. The medical examiner determined the cause of death

was a single gunshot wound to the head. Inside the victim's skull, the medical examiner located pellets and plastic wadding consistent with a shotgun cartridge. Also located inside the skull was a blue in color cloth material.

13. I confirmed with tribal enrollment services processor Joel Lasiloo that SULLIVAN and the victim are enrolled members of the GRIC.

14. Your affiant conducted research of police calls for service at K.S.'s home involving the victim and SULLIVAN, utilizing the GRPD Records Management System. The check revealed multiple incidents in which SULLIVAN was listed as the suspect and the deceased victim as the victim. The GRPD report numbers were identified as follows:

GRPD #15-04824, dated 10/16/2015, in which SULLIVAN told K.S. and the victim, "I'm gonna kill all you mother fuckers."

GRPD #15-04858, dated 10/18/2015, in which SULLIVAN threatened K.S. and the victim, saying, "I'm going to kill all you mother fuckers." The victim was the reporting party, and he said SULLIVAN was striking K.S. prior to police arrival.

GRPD #16-01878, dated 04/24/2016, in which SULLIVAN physically assaulted the victim by punching him in the face with a closed fist, while she was five months pregnant.

15. Based on the above listed facts, your Affiant believes there is probable cause to charge ANGEL ROXANNE SULLIVAN, an Indian, with the crimes of CIR-Murder in the Second Degree, in violation of Title 18, United States Code, Sections 1153 and 1111, and Use of a Firearm During a Crime of Violence, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii), within the confines of the Gila River Indian Community (GRIC), District of Arizona, on May 21, 2017.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 5/24/2016

Orlando Ramirez, Detective
Gila River Police Department

Subscribed and sworn to before me this 24 day of May, 2017

HONORABLE DAVID K. DUNCAN
United States Magistrate Judge